UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS A. MARTINEZ,

      Plaintiff,

  v.

P. LOPEZ, et al.,

      Defendants.

No.  2:22-cv-1369-DC-CKD P

FINDINGS AND RECOMMENDATIONS

Plaintiff Luis A. Martinez is a state prisoner proceeding pro se with a civil rights action filed pursuant to 42 U.S.C. § 1983. Defendants' motion for summary judgment is before the court. (ECF No. 55.) The motion should be granted because there is no genuine dispute of material fact for trial.[1]

**PROCEDURAL BACKGROUND**

Plaintiff initiated this case on August 2, 2022. (ECF No. 1.) He filed the operative first amended complaint on August 2, 2022. (ECF No. 10.) After the screening required by 28 U.S.C. § 1915A(a), the case proceeded on plaintiff's Eighth Amendment medical deliberate indifference claims against defendants Lopez, DeRamus, and Gordon in their individual capacities. (ECF Nos. 11, 18.)

---

[1] In light of this determination, and in the interests of judicial economy, the court does not analyze defendants' argument based on qualified immunity.

1

On September 9, 2025, defendants filed the motion for summary judgment presently before the court. (ECF No. 55.) Plaintiff timely opposed the motion.[2] (ECF No. 60.) Defendants filed a reply. (ECF No. 62.)

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

////

---

[2] On September 30, 2025, defendants filed a notice asserting plaintiff had failed to timely oppose the motion and requesting dismissal of the case with prejudice. (ECF No. 59.) Plaintiff's written opposition to the motion for summary judgment was file-stamped October 1, 2025. Under the prison mailbox rule, see Houston v. Lack, 487 U.S. 266 (1988), the constructive filing date is September 28, 2025. (See ECF No. 60 at 13.) Accordingly, the opposition was timely filed and the request for dismissal is denied.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

3

**EVIDENCE**

## I.   Plaintiff's Verified Allegations[3]

At all times relevant, plaintiff was an inmate at California Medical Facility (CMF) suffering from a condition called Short Bowel Syndrome which requires daily IV infusions (TPN) through a PICC line. (ECF No. 10 at 3; ECF No. 60 at 8.) Plaintiff was housed in the COVID Isolation Wing and had been assured a nurse would always be stationed there in case he needed to call for immediate medical assistance. (ECF No. 60 at 8-9.)

On December 26, 2021, plaintiff's IV pump started beeping due to air in the line. (ECF No. 60 at 9.) Plaintiff attempted to summon medical assistance beginning at 1:46 a.m., did not receive a response until roughly 2:30 a.m., and did not see medical staff until 3:20 a.m. (Id. at 9.)

On December 28, 2021, plaintiff saw his physician and expressed concerns about not receiving prompt nursing care and was assured nursing would be available, especially immediately after TPN infusions. (ECF No. 60 at 9.) On January 3, 2022, plaintiff refused TPN due to repeated issues with staff taking a long time to respond to his requests for medical assistance, specifically in the mornings after his TPN infusion finished. (Id. at 10.)

On January 5, 2022, at 9:00 a.m., plaintiff requested medical assistance from defendants DeRamus and Gordon to flush his PICC line after his TPN finished so the line would not get clogged. (ECF No. 10 at 3; ECF No. 60 at 10.) Defendant Gordon arrived at plaintiff's cell after plaintiff had been attempting to request medical assistance for about 30 minutes. (ECF No. 60 at 10.) Both defendants DeRamus and Gordon told plaintiff he would be seen by defendant Lopez during her 11:00 a.m. medication pass. (ECF No. 10 at 3-4; ECF No. 60 at 10.)

Plaintiff knew from past experiences that if the PICC line was not flushed almost immediately, it would more than likely clog. (ECF No. 60 at 10.) He alleges the risk was obvious

---

[3] In resolving this motion, the court credits plaintiff's verified allegations in the first amended complaint and the statements in his declaration signed under penalty of perjury (see ECF No. 60 at 7-13) to the extent they are based on plaintiff's personal knowledge of specific, admissible facts. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000). However, statements that are legal conclusions and statements that are speculative assertions do not raise a genuine dispute of fact. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).

because he was connected to a machine and had just finished TPN. (Id.)

Plaintiff informed defendant Gordon he could not wait that long to avoid his line getting clogged but defendant Gordon stated he would not overstep the nurse. (ECF No. 10 at 3-4; ECF No. 60 at 10.) When defendant Lopez tried to flush the PICC line at 11:00 a.m., it had clogged. (Id.) Plaintiff had to have another PICC Line put in and was hospitalized. (Id.)

## II.    Undisputed Facts from Defendants' Evidence

### A.    The Parties

At all relevant times, plaintiff was a state prisoner incarcerated at CMF and the defendants were employed by CDCR and working in the COVID-19 isolation unit at CMF where plaintiff was housed. (DUMF 1, 2, 3, 5, 7.) Defendant P. Lopez was a Registered Nurse (RN). (DUMF 3.) Defendant Gordon was a Correctional Officer (C/O). (DUMF 7.) Defendant DeRamus was a Certified Nursing Assistant (CNA). (DUMF 5.)

A CNA is an entry-level position with a limited scope of practice performing patient care activities and related nonprofessional health care activities. (DUMF 74, 75.) A CNA working in the COVID-19 isolation unit at CMF at the relevant time was primarily responsible for tasks such as assisting patients with hygiene and daily living activities, suicide watch activities, assistance with ambulation, positioning and turning patients as needed, observing and recording changes to a patient's condition, taking vital signs, and reporting clinical data to the appropriate nursing staff. (DUMF 76, 77, 78, 79.) Defendant DeRamus' scope of practice did not include flushing a PICC line. (DUMF 5, 80, 81.)

### B.    Plaintiff's Medical Needs

Plaintiff has had multiple abdominal surgeries. (DUMF 8.) In 2016, plaintiff had surgery to remove his entire small bowel and was subsequently placed on TPN to meet his daily nutritional needs. (DUMF 10.) TPN, also known as IV feedings, involves the delivery of essential nutrients directly into the bloodstream. (DUMF 11.) TPN is generally administered through IV catheters in the neck or groin, known as central lines or PICC lines, which can remain in place longer than the more common peripheral IVs typically placed in the arms of most hospitalized patients. (DUMF 12.)

5

A PICC line is inserted into a vein in the patient's upper arm and threaded into his superior vena cava. (DUMF 13.) The needle port remains outside of the patient's body. (DUMF 14.) A typical PICC line has two lumens, each with its color-coded access port. (DUMF 15.)

Infection is a common issue for patients on parenteral nutrition. (DSUF 18.) Bacteria from the catheters can infect the patient's bloodstream. (DUMF 19.) If the infection spreads throughout the patient's body, it can lead to sepsis, which is a life-threatening complication. (DUMF 20.)

To prevent infection, strict sterile standards must be maintained. (DUMF 22.) After each use, the PICC line must be flushed. (DUMF 23.) The standard practice for flushing the catheter is to inject saline slowly and smoothly into the catheter by gently pushing the plunger, or to do a little, then stop, then try to inject some more. (DUMF 24, 25.) The goal is to inject all the saline into the catheter with minimal pressure. (DUMF 26.)

Pressure usually indicates the PICC line is obstructed. (DUMF 27.) The standard practice for unclogging a PICC line is to flush it with heparin, an anticoagulant that decreases the blood's clotting ability and keeps the blood flowing smoothly through the catheter. (DUMF 28.) If heparin fails, a replacement procedure should be scheduled immediately. (DUMF 29.)

At the relevant time, TPN was administered to plaintiff over 9.5 hours a day at night. (DUMF 17.) His PICC line had one red port and one port that was alternately described as either blue or purple. (DUMF 16.)

### C. Evidence from Plaintiff's Medical Records

A progress note dated December 16, 2021, by plaintiff's primary care physician, Dr. D. Perlada, noted plaintiff had "multiple central line infections" after being placed on TPN, including "a recent line infection in September 2021 that required a new tunneled catheter on the right chest. So far doing okay without any new infection." (DUMF 21; ECF No. 55-7 at 13.)

On December 24, 2021, Dr. Perlada saw plaintiff and placed plaintiff in the COVID isolation wing. (DUMF 30.)

On December 27, 2021, nonparty RN Wells sent an email to notify the medical team that plaintiff's red port was showing slight leakage. (DUMF 37; ECF No. 55-7 at 26.)

////

On December 28, 2021, Dr. Perlada saw plaintiff and confirmed the red port was leaking while the blue port remained usable. (DUMF 43; ECF No. 55-7 at 27.) Dr. Perlada submitted a Request for Services (RFS) to send plaintiff to a hospital for an interventional radiologist to remove and replace the failing PICC line. (DUMF 44.) Dr. Perlada noted this would need to occur on or after January 3, 2022, due to plaintiff's recent positive COVID-19 test. (DUMF 45.) The RFS was approved by Chief Physician & Surgeon Dr. N. Ikegbu, who requested the procedure be performed within 14 days, i.e., by January 11, 2022. (DUMF 46, 47.)

On December 30, 2021, nonparty RN Santos documented that plaintiff's blue port could be flushed easily while the red port remained clogged. (DUMF 48.)

On December 31, 2021, Plaintiff saw Dr. Perlada. (DUMF 49.) Dr. Perlada noted "purple port looks okay and flushing and able to draw blood" and "[u]rgent RFS for PICC line replacement over-the-wire is in place and awaiting appointment with San Joaquin General Hospital." (DUMF 50, 51.)

On January 2, 2022, nonparty RN Saetern noted plaintiff appeared visibly upset and refused care, stating "I don't want to take any from you. No meds, no TPN, no dressing change. Take the pumps out of here." (DUMF 53.)

On January 5, 2022, at 11:45 a.m., defendant Nurse Lopez emailed Dr. Perlada, stating "I/P [inmate patient] Martinez, "PICC line is clogged. I tried flushing it and it was unsuccessful. I/P did not allow [me] to troubleshoot." (DUMF 60.) In the afternoon, Dr. Perlada saw Plaintiff and documented as to plaintiff's PICC line, the "red port has been broken since around 12/23/2021, but now both ports are also clogged. Attempted to put heparin flush but still unable to unclog it. Will attempt again later on." (DUMF 60, 62.) Dr. Perlada informed plaintiff that replacement of his tunneled catheter had been scheduled for January 7, 2022. (DUMF 63.)

On the morning of January 7, 2022, plaintiff received a right chest tunneled venous catheter exchange at the San Joaquin State Hospital and returned to CMF at approximately 1:50 p.m. (DUMF 64, 65.) At 5:46 p.m., defendant Nurse Lopez noted "Martinez is refusing his TPN until he gets move[d] to G2." (DUMF 67.) At 8:01 p.m., defendant Lopez further reported the following:

7

> I/P [is] upset that he is not able to transfer back to G2 per discussion with staff. I/P refused to have TPN infused and/or tunnel catheter flushed. Instruct[ed] I/P that if at any given time he change[d] his mind, [he should] notif[y] medical staff to start him back on his TPN and/or flush his tunnel catheter.

(DUMF 68; ECF No. 55-7 at 52.)

On January 8, 2022, at 12:54 p.m., defendant Nurse Lopez noted plaintiff "refused dressing change to the right upper tunnel catheter" and "[is] upset that he is not able to be [transferred] back to G2 per discussion with staff." (ECF No. 55-7 at 52.) And further, plaintiff "refused to have TPN infused and/or Tunnel Cath flushed." (Id.)

Later that day, nonparty RN Barker noted redness and tenderness at plaintiff's right anterior chest wall central line and elevated temperature. (ECF No. 55-7 at 54.) Plaintiff was taken to the Triage and Treatment (TTA) area at CMF, a clinic providing urgent care within the institution. (DUMF 71.) After plaintiff subsequently complained of chills and chest pain, he was sent to the hospital via ambulance. (ECF No. 55-7 at 54.)

On January 9, 2022, plaintiff was admitted to the Emergency Room at the North Bay Medical Center and diagnosed with localized cellulitis and Acinetobacter baumannii sepsis secondary to cellulitis near the catheter site. (DUMF 72.) The infection resolved during hospitalization with no need to undergo a further PICC line replacement. (DUMF 73.)

**DISCUSSION**

I.      **Legal Standard for Deliberate Indifference**

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual defendant is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez, 203 F.3d at 1131-32.

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096. First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

8

wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096.

The second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Jett, 439 F.3d at 1096. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839.

## II.    Analysis

Defendants argue (1) the alleged two-hour delay to flush plaintiff's PICC line did not cause any further injury, including the clog, the subsequent line replacement, or the infection; (2) there is no evidence of subjective deliberate indifference; and (3) qualified immunity should be granted. (ECF No. 55-1.) Defendants do not dispute that plaintiff had a serious medical need. Thus, the court focuses on the alleged delay in care and defendants' responses to plaintiff's serious medical need.

### A.  Defendant RN Lopez

Mere delay of medical treatment, without more, does not suffice to show deliberate indifference. Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). When a prisoner alleges deliberate indifference based on delay of medical treatment, the prisoner must show the delay caused harm and the defendant should have known this would be the case. See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Plaintiff argues the delay in flushing his PICC line on January 5, 2022, caused the following harm:

> (1) unnecessary clog [ ]; (2) additional procedures; (3) infection; (4) the need for several antibiotics; (5) cellulitis; (6) acinetobacter baumanill [ ]; (7) sepsis [ ]; (8) fear, (9) threat to life/health, (10) mental anguish, (11) immediate unnecessary pain and suffering.

(ECF No. 60 at 3.)

First, plaintiff cannot receive an award of money damages for mental or emotional if there is no showing of physical injury. See 42 U.S.C.A. § 1997e ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury…."). In the Ninth Circuit Court, this requires "a prior showing of physical injury that need not be significant but must be more than de minimis." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).

Second, it is undisputed that Dr. Perlada ordered plaintiff's PICC line replacement prior to the clog of the blue\purple port that occurred on January 5, 2022. The clog on January 5 did not necessitate replacement of the PICC line on January 7, 2022.

Third, the post-surgical infection and related harm promptly followed plaintiff's refusal of medical care after he returned from the hospital on January 7, 2022. Specifically, plaintiff refused to have his newly placed tunnel catheter flushed on January 7, and again on January 8, which was the same the day his condition suddenly worsened due to the post-surgical infection. (ECF No. 55-7 at 52-53.) Plaintiff knew from his own past experiences it was important to flush the line. (ECF No. 60 at 10.) Plaintiff "has no right to refuse treatment and then claim deliberate indifference to his medical condition." McNeil v. Singh, No. 1:12-CV-01005-RRB, 2013 WL 1876127, at *19 (E.D. Cal. May 3, 2013), aff'd, 559 F. App'x 624 (9th Cir. 2014). There is no record evidence to support a finding that the post-surgical infection or any related harm resulted from the delay in flushing plaintiff's PICC line on January 5, 2022.

Fourth, the record reflects defendant Nurse Lopez attempted unsuccessfully to flush plaintiff's clogged PICC line at 11:45 a.m. on January 5, 2022. (DUMF 60.) Her note indicates plaintiff "did not allow me to troubleshoot." (ECF No. 55-7 at 45.) Plaintiff does not dispute that he refused to allow defendant Lopez to troubleshoot the issue after the line became clogged and defendant Lopez was unable to initially flush the line with heparin. Plaintiff's refusal to allow defendant Lopez may have contributed to or caused any harm suffered from the clog on January 5, 2022.

Nevertheless, the court assumes for purposes of resolving this motion there is a triable issue of fact regarding whether a delay in care not attributable to plaintiff on January 5, 2022,

10

caused or contributed to the clog in the blue\purple port that day. That dispute is immaterial because the record evidence viewed in the light most favorable to plaintiff does not support finding defendant Lopez was subjectively, deliberately indifferent. Defendant Lopez was not required to accept as true plaintiff's personal belief that waiting until medication pass for the PICC line to be flushed would result in a harmful clog. See generally, e.g., Barbic v. Chirinos, No. 2:20-CV-07071-FLA-JC, 2024 WL 3542573, at *7 (C.D. Cal. June 4, 2024), report and recommendation adopted, No. 2:20-CV-07071-FLA (JC), 2024 WL 3540973 (C.D. Cal. July 24, 2024) ("Defendants… were not required to accept at face value Plaintiff's belief that a seizure was imminent."). Plaintiff asserts a mere difference of opinion as to defendant Lopez's decision that flushing his PICC line during her 11:00 a.m. medication pass was appropriate under the circumstances. However, a difference of medical opinion by a prisoner about the proper course of treatment does not show deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Viewing the evidence in the light most favorable to plaintiff, defendant Lopez's conduct in regard to the alleged delay amounts to no more than potential negligence, which is not enough to establish a constitutional violation. See Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) ("Mere negligence in the provision of medical care… does not constitute a constitutional violation.") (citing Estelle, 429 U.S. at 105-106). It is undisputed that PICC lines sometimes clog, after which the standard practice is to attempt to flush the line with heparin, and if that fails the line must be replaced. (DUMF 28, 29.) Although plaintiff alleges he knew the line needed to be flushed immediately after the machine started beeping, and that doing so would have prevented the clog, plaintiff's subjective belief is not sufficient to demonstrate defendant Lopez should have known an approximate two-hour delay would cause harm. See Toguchi, 391 F.3d at 1058; Kenyon v. Gutierrez, No. 4:24-CV-00426, 2024 WL 3605962, at *6 (M.D. Pa. July 30, 2024) (allegations that defendants should have known that a PICC line needed to cleaned more frequently and failed to meet the proper standard of care in doing so did not amount to deliberate indifference). Plaintiff fails to raise a triable issue of material fact regarding defendant Lopez's subjective state of mind for deliberate indifference.

### B. CNA DeRamus and C/O Gordon

Even if plaintiff suffered actionable harm from the two-hour delay in having his PICC line flushed on January 5, 2022, there is no basis in the record to hold defendant DeRamus, a CNA, or defendant Gordon, a C/O, liable for that harm. Plaintiff does not dispute that these defendants responded to his requests for care informing him he would be seen by defendant Lopez during her 11:00 a.m. medication pass.

Nothing in the record suggests defendant DeRamus made the decision to delay flushing plaintiff's PICC line until defendant Lopez came during medication pass. It is undisputed that defendant DeRamus' scope of practice did not include flushing plaintiff's PICC Line. Nothing in the record suggests defendant DeRamus had the authority to make a different plan for plaintiff's treatment. Even if defendant DeRamus should have bypassed defendant Lopez and taken some further action, defendant DeRamus' conduct in not doing so involves no more than negligence, which does not suffice to establish a constitutional violation. See Frost, 152 F.3d at 1130.

Likewise, as custody staff and a non-medical prison official, defendant Gordon was not deliberately indifferent for relying on defendant Lopez's judgment. "If a prisoner is under the care of medical experts [...] a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004); Barbic, 2024 WL 3542573, at *7 (collecting cases and holding "[i]t is generally reasonable for correctional officers to rely on the judgments of medical professionals, including nurses"). The record contains no evidence that defendant Lopez was obviously unqualified to assess plaintiff's needs or that her judgment was so facially inadequate that the need for faster or different care should have been obvious to a layperson. There is no genuine factual dispute for trial.

### PLAIN LANGUAGE SUMMARY FOR PRO SE PARTY

The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the evidence submitted in the pending motion for summary judgment and your opposition, along with the sworn allegations in your complaint and concluded there is no genuine issue of material fact for trial. The undersigned is recommending the

12

defendants' motion for summary judgment be granted. If you disagree, you have 14 days to explain to the court why that is not the correct outcome. Label any such explanation "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will make the final decision on the motion for summary judgment.

## CONCLUSION

For the reasons set forth above, IT IS RECOMMENDED as follows:

1. Defendants' request for dismissal with prejudice (ECF No. 59) be denied.

2. Defendants' motion for summary judgment (ECF No. 55) be granted.

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within 7 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 22, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8 mart1369.msj

13